UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                        Case No. 3:12-bk-237-JAF

                                              Chapter 13

EMIL N. HERNANDEZ
and JANICE G. HERNANDEZ,

Debtors.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon Trustee's Motion to Modify Confirmed Chapter 13 Plan (the "Motion to Modify") (Doc. 58) and Objection to Trustee's Motion to Modify Confirmed Chapter 13 Plan filed by Debtors (Doc. 60). On September 22, 2014, the Court conducted a hearing on the Motion to Modify. In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On January 17, 2012, Debtors filed a Chapter 13 bankruptcy petition. (Doc. 1). Emil Hernandez is a dental hygienist and Janice Hernandez is a consultant for Bank of America. Debtors have a daughter who was 6 at the time of filing and a son who was 2 at the time of filing. Along with their petition, Debtors filed Schedules I and J (the "Original Schedules I and J") and Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "Original B22C") (Doc. 5), which reflected annualized current monthly income of $114,460.20 and negative monthly disposable income of $1,009.07. According to the Original B22C and the Original Schedule I, Mr. Hernandez' gross monthly income was $1,975.60 and Mrs. Hernandez' gross monthly income was $7,562.75.

On April 4, 2013, Debtors filed Amended Schedules I and J (Doc. 33) and Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "Amended B22C") (Trustee's Ex. 3). According to the Trustee, the Amended B22C more accurately reflected Debtors' finances "as known through their pay advices and as correct at the time of filing." However, the Original Schedule I and Amended Schedule I are identical as are the Original B22C and the Amended B22C. Accordingly, it is unclear to what the Trustee is referring. The Amended Schedule J claims expenses of $6,494.00 versus expenses of $6,164.00 on the Original Schedule J.

Debtors' confirmation hearing was originally scheduled for April 10, 2012. After continuing the confirmation hearing six times (at the request of one or both of the parties), the Court conducted a final confirmation hearing on September 3, 2013. Three days prior to the confirmation hearing the Trustee had received a copy of Debtors' 2012 tax return (Debtors' Ex. 1) which reflected adjusted gross income of $177,887.00, an amount significantly higher than that listed on Debtors' Amended B22C. Nonetheless, the Trustee relied on Debtors' pay advices from the six months prior to the filing of their petition and their Amended B22C, which reflected negative disposable income. The Trustee recommended that Debtors' plan be confirmed. The Court confirmed the Plan and on September 17, 2013, entered Order Confirming Chapter 13 Plan Allowing Claims and Directing Distribution (the "Confirmation Order"). Unsecured creditors were to receive $11,048.20, calculated by adding the liquidation amount from a Chapter 7 and the 2012 tax refund of $2,879.00.

Once the Trustee reviewed the 2012 tax return, he did not seek modification of the plan, despite the fact that the return reflected adjusted gross income which exceeded the basis upon which the plan was confirmed by $63,427.00. Debtors' 2013 tax return reflected adjusted gross

2

income of $173,645.00, an amount which exceeded the basis upon which the plan was confirmed by $59,185.00 (Debtors' Ex. 2). The 2013 tax return also indicated Debtors were entitled to a refund of $6,050.00. Debtors did not turn over the refund to the Trustee. Thereafter, the Chapter 13 Trustee filed the Motion to Modify.

On September 18, 2014, Debtors filed a Second Amended Schedule I and J and a Second Amended B22C, which reflected annualized current monthly income of $112,353.00 and negative monthly disposable income of $2,247.00 (Debtors' Ex. 5). The Second Amended B22C and the Second Amended Schedule I reflect that Mr. Hernandez' monthly income is $1,800.00 and Mrs. Hernandez' monthly income remains $7,562.75.[1] Mr. Hernandez testified that his hours were reduced in 2014 and his income decreased. He testified that he found another job which is further from his home resulting in a 100 mile round trip commute and increased gas and vehicle maintenance costs. He also testified that his children both attend Catholic school. During the 2013-2014 school year, Debtors' son was in voluntary pre-kindergarten so Debtors were only required to pay after school expenses for him. Debtors' son is now in kindergarten so Debtors pay tuition for both children.

Mr. Hernandez testified the 2013 tax refund was used to make delinquent payments to the Trustee. He also testified that he had a leak in his home's master bathroom shower which was not covered by homeowner's insurance and spent $5,000.00 to fix it.

## Conclusions of Law

The Trustee acknowledges that he was in possession of Debtors' 2012 tax return at the time of the confirmation hearing. However, it is the Trustee's position that delaying

---

[1] Based upon the 2012 and 2013 tax returns and assuming that Mrs. Hernandez' income has remained the same, Mr. Hernandez earned approximately $24,000 in 2011, approximately $85,000 in 2012, approximately $83,000.00 in 2013, and approximately $21,600 in 2014.

3

confirmation while he reviews post-petition tax returns is inefficient. Instead, the Trustee relies on pay advices, the B22C, and any amendments to the pleadings to evaluate disposable income for confirmation. The Trustee adds the post-petition, pre-confirmation tax refund to the liquidation analysis.

Although the Trustee received the 2012 tax return three days prior to the confirmation hearing, it was routed to the tax department along with all other open case, post-petition tax returns. According to the Trustee, "[a]t the time of the 2012 tax review, the issue became that the pay advices for the six (6) months prior to filing appeared to be accurately reflected in the Amended Form B22C and the basis on which the plan was confirmed." The Trustee believed that seeking a modified plan based on the 2012 tax return rather than the six month look back period appeared inappropriate. However, upon receipt and review of the 2013 tax return, and the $59,185.00 increase in income between the Amended B22C and the 2013 tax return, the Trustee deemed it appropriate to ask for a modification.

The Trustee asserts that $28,202.79 of the $59,185.00 represents disposable income which should be paid into the Plan over the remaining life of the Plan. The Trustee seeks to have Debtors turn over their 2013 tax refund in the amount of $6,050.00 and to increase their plan payments by $972.51 for months 32-60 of the plan. The Trustee proposes a modified confirmed plan which requires Debtors to pay $10,003.09 (the sum of the current plan payment of $3,953.09 and Debtors' 2013 tax return of $6,050.00) in month 31 of the Plan and $4,925.60 (the sum of the current plan payment of $3,953.09 and $972.51) per month in months 32 through 60 of the Plan (Trustee's Ex. 5).

Section 1329(b)(1) of the Bankruptcy Code permits the trustee, the debtor, or an unsecured creditor, any time after confirmation of a plan but before the completion of payments

under the plan, to seek an increase in the amount of payments on claims of a particular class provided for by the plan. 11 U.S.C. § 1329. The party seeking modification must show a substantial, unanticipated change in circumstances. See In re Savilonis, 2014 WL 3361986 at *2, Case No. 3:12-bk-5762-JAF (Bankr. M.D. Fla. July 9, 2014). "[P]rinciples of claim preclusion or res judicata bar a trustee from raising as grounds for modification facts that were known and could have been raised prior to confirmation of the debtor's plan." In re Euler, 251 B.R. 740, 746 (Bankr. M.D. Fla. 2000)(quotation omitted). While bankruptcy courts vary widely over what constitutes a substantial, unanticipated change, courts consider a change in the debtor's income or expenses in contemplating changed circumstances. In re Savilonis, 2014 WL 3361986 at *3.

**2013 Increased Income**

The Trustee seeks to modify Debtors' plan to require them to pay $4,925.60 (the sum of the current plan payment of $3,953.09 and $972.51) per month in months 32 through 60 of the Plan. The Court finds that the Trustee has not shown an unanticipated change in circumstances between the time of confirmation and the receipt of Debtors' 2013 tax return. At the time of confirmation, the Trustee was in possession of Debtors' 2012 tax return which reflected adjusted gross income of $177,887.00. However, for reasons not understood by the Court[2], the Trustee recommended confirmation based upon Debtors' Amended B22C which reflected annualized

---

[2] The Trustee places the blame on Debtors, contending that if they knew they had such a large increase in income which was not accurately reflected in their pay advices for the six months prior to the filing, it was incumbent upon them to file amended schedules that accurately reflected the change or to alert the Court and all parties in interest that the Amended B22C was inaccurate and they were making significantly more. The Court agrees. Debtors signed their Amended B22C under penalty of perjury that the information provided therein was true and correct. They did not comply with their obligation to provide the Court with accurate information. By the same token, however, it was incumbent upon the Trustee to review the Amended B22C. The Trustee failed to notice that the Amended B22C was identical to the Original B22C. Moreover, while the Court appreciates the Trustee's explanation that delaying confirmation while he reviews post-petition tax returns is inefficient, in the instant case that procedure resulted in the Trustee recommending confirmation despite the fact that Debtors' 2012 income was over $60,000.00 greater than the amount upon which the case was confirmed.

5

current monthly income of $114,460.20 and negative monthly disposable income of $1,009.07. Debtors' 2013 tax return reflected adjusted gross income of $173,645.00, an amount approximately $4,000.00 less than the 2012 adjusted gross income. Based upon the 2012 income, the 2013 income was not unanticipated. The Court will deny the Motion to Modify to the extent it seeks an increase in payments in months 32-60 of the Plan.

### 2013 Tax Refund

The Trustee seeks to modify Debtors' plan to require Debtors to pay $10,003.09 (the sum of the current plan payment of $3,953.09 and Debtors' 2013 tax return of $6,050.00) in month 31 of the Plan. Debtors contend that they spent the money on making back payments to the Trustee. In In re Carrasco, 395 B.R. 154, 156 (Bankr. M.D. Fla. 2008), the Court held that future income tax refunds constitute property of the estate and fall with the purview of what may be considered disposable income. The Court noted that whether or not a debtor's income tax refund would be considered disposable income would be determined on a case by case basis depending upon a debtor's living expenses. Id. Given the Court's published decision on the matter, Debtors' attorney and Debtors are tasked with knowing that, absent contrary guidance or permission from the Trustee, they are required to turn over all post-petition tax refunds to the Trustee. However, rather than seeking permission to use the refund, Debtors spent it. Had the Trustee realized at the time of confirmation that Debtors' 2012 income was $177,887.00, Debtors would likely have been required to pay a significantly higher payment to obtain confirmation of their plan. While it is unclear when in 2014 Mr. Hernandez' hours and income decreased, Debtors made at least two years of plan payments based on an approximate annual income of $114,000.00 while earning an annual income exceeding $170,000.00. Debtors seek to avoid the turnover of their $6,050.00 refund on the basis that they spent the money on unexpected expenses despite having retained in

excess of $28,000.00 of disposable income that should have gone to their unsecured creditors. This the Court cannot condone. The Court will grant the Motion to Modify to the extent it seeks turnover of Debtors' 2013 refund.

## Conclusion

The Trustee did not demonstrate an unanticipated change in circumstances between the time of confirmation and the receipt of Debtors' 2013 tax return. Accordingly, to the extent the Trustee seeks to modify Debtors' plan to capture the increase in income between Debtors' Amended B22C and their 2013 tax return, the Motion to Modify will be denied. To the extent the Trustee seeks to modify Debtors' plan to require them to pay their 2013 tax refund into the Plan, the Motion to Modify will be granted. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 28 day of January, 2015 in Jacksonville, Florida.

JERRY A. FUNK
United States Bankruptcy Judge